UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CYNTHIA HAMPTON,

    **Plaintiff,**

**v.**

                         **Case No.** _____

**CITY OF ST. PETERSBURG,
FLORIDA,**

    **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, CYNTHIA HAMPTON, hereby sues Defendant, CITY OF ST. PETERSBURG,

FLORIDA, for claims of religious discrimination and retaliation under Title VII of the Civil Rights

Act of 1964 and alleges the following:

### PARTIES

1.    Cynthia Hampton is a resident of Pinellas County, Florida.

2.    The City of St. Petersburg, Florida is a municipal corporation, whose city hall is

located in Pinellas County, Florida.

### VENUE

3.    Proper venue for this action lies in the United States District Court for the Middle

District of Florida, Tampa Division.

### DEFINITIONS

4.    Defendant is a "person" within the definition of 42 U.S.C. § 2000e(a), because

Defendant is a governmental entity.

5.    Defendant is an "employer" within the definition of 42 U.S.C. § 2000e(b), because

Defendant has employed more than fifteen (15) employees for a period longer than twenty (20) weeks of the year prior to accrual of this action.

6.       Defendant conducts business as a municipal corporation, which is an "industry affecting commerce" within the definition of 42 U.S.C. § 2000e(h).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.       On or about December 3, 2002, Plaintiff filed a formal charge number 15GA300042 of employment discrimination with the Equal Employment Opportunity Commission [hereinafter the "EEOC"], alleging violations of Title VII of the Civil Rights Act of 1964.

8.       Plaintiff filed her formal charge of employment discrimination with the EEOC within 300 days of the alleged discriminatory misconduct.

9.       On April 24, 2003, Plaintiff requested a notice of right to sue.

10.      On June 26, 2003, the U.S. Department of Justice issued the notice of right to sue, which is attached hereto as Plaintiff's Exhibit "A".

11.      Plaintiff filed this action in federal court within 90 days of receiving her notice of right to sue.

## COUNT I: RELIGIOUS DISCRIMINATION

12.      Plaintiff incorporates the allegations of averments 1-11 herein by reference.

13.      This is a civil action under 42 U.S.C. § 2000e-2(a)(1) of Title VII, as amended.

14.      This Court has subject matter jurisdiction over these federal questions under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

15.      Cynthia Hampton is a practicing Jehovah's Witness and has been for many years.

16.      In 1982, the City of St. Petersburg, Florida hired Cynthia Hampton as an Emergency

2

Complaint Writer in the Communications Center of the police department.

17.   Cynthia Hampton worked in that job for 20 years.

18.   An Emergency Complaint Writer is neither a sworn, nor certified law enforcement officer.

19.   In July of 2002, one of Cynthia Hampton's supervisors informally asked her to see the city's chosen doctor for the purpose of reviewing her medical status.

20.   On August 1, 2002, Cynthia Hampton sent a memo to Assistant Police Chief, Debbie Prine, acknowledging that she would see the city's doctor.

21.   On or about September 17, 2002, Edwina Maxwell, an Employee Assistance Coordinator, sent a "Patient Consent and Authorization" form to Cynthia Hampton through inter-office mail.

22.   A true and correct copy of the "Patient Consent and Authorization" form is attached hereto as Plaintiff's Exhibit "B".

23.   Neither a cover letter, nor any instructions were sent to Cynthia Hampton with the form.

24.   On September 19, 2002, Cynthia Hampton's immediate supervisors, Brandie Ball and Jacqueline Yeager, summoned Ms. Hampton to an office at the police department.

25.   At that time, Supervisors Ball and Yeager ordered Cynthia Hampton to sign the "Patient Consent and Authorization" form.

26.   For religious reasons, Cynthia Hampton told her supervisors that she would not authorize health care providers to perform "treatment as deemed necessary in their professional judgment," as stated in the form.

3

27.     Cynthia Hampton's religion prohibits blood transfusions.

28.     As a long-standing religious practice, Jehovah's Witnesses do not authorize any health care provider to perform blood transfusions on them.

29.     Cynthia Hampton informed her supervisors that she could not sign a blanket authorization for a health providers to perform "treatment as deemed necessary in their professional judgment," as that would violate her religious beliefs against blood transfusions.

30.     Supervisor Yeager then informed the Division Manager of the Communications Center, Michael McDonald, that Cynthia Hampton would not sign the "Patient Consent and Authorization" form due to a religious belief against authorizing blood transfusions.

31.     On October 3, 2002, the police department assigned Detective R. S. Jones to investigate a civilian employee, Cynthia Hampton.

32.     On October 7, 2002, Detective Jones interrogated Cynthia Hampton about her refusal to sign the "Patient Consent and Authorization" form.

33.     Cynthia Hampton again expressed her religious reservations about signing the form to Detective Jones.

34.     After interrogating Cynthia Hampton, Detective Jones took her to see the Police Chief, Charles "Chuck" Harmon.

35.     In the meeting with Chief Harmon, Cynthia Hampton explained that she would not sign the "Patient Consent and Authorization" form on religious grounds.

36.     Cynthia Hampton explained to Chief Harmon that she could not authorize anyone to perform blood transfusions upon her, because Jehovah's Witnesses cannot have blood transfusions.

4

37.     Cynthia Hampton then offered to sign the "Patient Consent and Authorization" form with the deletion of one sentence.

38.     Chief Harmon refused to delete any language and ordered Cynthia Hampton to sign the form.

39.     Chief Harmon told Cynthia Hampton that he would convene a Chain of Command Board hearing to charge her for insubordination, unless she signed the "Patient Consent and Authorization" form.

40.     Cynthia Hampton steadfastly refused to sign the "Patient Consent and Authorization" form on religious grounds, and Chief Harmon ended the meeting.

41.     On October 14, 2002, the city convened a hearing before a Chain of Command Board to consider terminating the employment of Cynthia Hampton.

42.     Chief Harmon chaired the Chain of Command Board of three members.

43.     At the hearing, Ms. Hampton presented a signed and typed memorandum to Chief Harmon.

44.     A true and correct copy of said memorandum is attached hereto as Plaintiff's Exhibit "C".

45.     Said memorandum stated that Cynthia Hampton would see the city's doctor and would sign the medical release if one sentence was deleted, but otherwise, she still objected to the release due to her "religious beliefs as a Jehovah's Witness."

46.     Shortly after receiving the memorandum on October 14, 2002, the City of St. Petersburg's Chain of Command Board terminated the employment of Cynthia Hampton.

47.     Based on the foregoing facts, Cynthia Hampton held a bona fide belief that

5

compliance with an employment requirement, signing a medical authorization, would be contrary to her religious belief or practice.

48.     Based on the foregoing facts, Cynthia Hampton informed her employer about the conflict between the employer's requirement and her religious belief or practice.

49.     Based on the foregoing facts, Cynthia Hampton was penalized by her employer for failing to comply with the conflicting employment requirement as follows:

        a.     By being subjected to an internal affairs investigation despite the fact that she was a civilian employee and not a sworn law enforcement officer; and

        b.     By being subjected to an interrogation by a police detective despite the fact that she was a civilian employee and not a sworn law enforcement officer.

50.     Based on the foregoing facts, Cynthia Hampton was also discharged for failing to comply with the conflicting employment requirement.

51.     In penalizing and terminating Cynthia Hampton, the City of St. Petersburg, through its authorized agents, willfully and recklessly disregarded whether its conduct was prohibited by Title VII.

52.     As a result of the City of St. Petersburg's discriminatory misconduct, Cynthia Hampton has lost her job, has lost wages, has lost seniority, has lost fringe benefits, has suffered an employer's repudiation of her closely-held religious beliefs, has suffered through an internal affairs investigation and interrogation, has suffered a permanent termination on her work record, and has suffered inconvenience in having to find other work.

**WHEREFORE,** Plaintiff, CYNTHIA HAMPTON, demands the following relief against Defendant, CITY OF ST. PETERSBURG, both under Title VII and under the Civil Rights Act of

1991:

      a.     reinstatement under 42 U.S.C. § 2000e-5(g), including all seniority;

      b.     back pay under 42 U.S.C. § 2000e-5(g), including all pay raises and fringe benefits;

      c.     front pay, including all pay raises and fringe benefits;

      d.     prejudgment interest;

      e.     compensatory damages for inconvenience and for pain and suffering under 42 U.S.C.

§ 1981a(a);

      f.     expert witness fees under 42 U.S.C. § 2000e-5(k);

      g.     attorney's fees under 42 U.S.C. § 2000e-5(k); and

      h.     costs under Federal Rule of Civil Procedure 54(d) and applicable federal statutes.

## COUNT II: RETALIATION

53.     Plaintiff incorporates the allegations of averments 1-11 herein by reference.

54.     This is a civil action under 42 U.S.C. § 2000e-3(a) of Title VII, as amended.

55.     This Court has subject matter jurisdiction over these federal questions under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

56.     Cynthia Hampton is a member of the protected class, because she opposed unlawful employment practices under Title VII by making verbal requests for religious accommodation and/or by protesting religious discrimination to numerous members management.

57.     On September 19, 2002, Cynthia Hampton's immediate supervisors, Brandie Ball and Jacqueline Yeager, summoned Ms. Hampton to an office at the police department.

58.     At that time, Supervisors Ball and Yeager ordered Cynthia Hampton to sign the "Patient Consent and Authorization" form.

59.     For religious reasons, Cynthia Hampton told her supervisors that she would not authorize health care providers to perform "treatment as deemed necessary in their professional judgment," as stated in the form.

60.     Cynthia Hampton's religion prohibits blood transfusions.

61.     As a long-standing religious practice, Jehovah's Witnesses do not authorize any health care provider to perform blood transfusions on them.

62.     Cynthia Hampton informed her supervisors that she could not sign a blanket authorization for a health providers to perform "treatment as deemed necessary in their professional judgment," as that would violate her religious beliefs against blood transfusions.

63.     Supervisor Yeager then informed the Division Manager of the Communications Center, Michael McDonald, that Cynthia Hampton would not sign the "Patient Consent and Authorization" form due to a religious belief against authorizing blood transfusions.

64.     On October 3, 2002, the police department assigned Detective R. S. Jones to investigate a civilian employee, Cynthia Hampton.

65.     On October 7, 2002, Detective Jones interrogated Cynthia Hampton about her refusal to sign the "Patient Consent and Authorization" form.

66.     Cynthia Hampton again expressed her religious reservations about signing the form to Detective Jones.

67.     After interrogating Cynthia Hampton, Detective Jones took her to see the Police Chief, Charles "Chuck" Harmon.

68.     In the meeting with Chief Harmon, Cynthia Hampton explained that she would not sign the "Patient Consent and Authorization" form on religious grounds.

8

69.     Cynthia Hampton explained to Chief Harmon that she could not authorize anyone to perform blood transfusions upon her, because Jehovah's Witnesses cannot have blood transfusions.

70.     Cynthia Hampton then offered to sign the "Patient Consent and Authorization" form with the deletion of one sentence.

71.     Chief Harmon refused to delete any language and ordered Cynthia Hampton to sign the form.

72.     Chief Harmon told Cynthia Hampton that he would convene a Chain of Command Board hearing to terminate her for insubordination, unless she signed the "Patient Consent and Authorization" form.

73.     Cynthia Hampton steadfastly refused to sign the "Patient Consent and Authorization" form on religious grounds, and Chief Harmon ended the meeting.

74.     On October 14, 2002, the city convened a hearing before a Chain of Command Board to consider terminating the employment of Cynthia Hampton.

75.     Chief Harmon chaired the Chain of Command Board of three members.

76.     At the hearing, Ms. Hampton presented a signed and typed memorandum to Chief Harmon.

77.     A true and correct copy of said memorandum is attached hereto as Plaintiff's Exhibit "C".

78.     Said memorandum stated that Cynthia Hampton would see the city's doctor and would sign the medical release if one sentence was deleted, but otherwise, she still objected to the release due to her "religious beliefs as a Jehovah's Witness."

9

79.    Shortly after receiving the memorandum on October 14, 2002, the City of St. Petersburg's Chain of Command Board terminated the employment of Cynithia Hampton.

80.    In violation of 42 U.S.C. § 2000e-3(a), the City of St. Petersburg harassed, intimidated, and discharged Cynthia Hampton because of her numerous verbal requests for religious accommodation and/or because of her protesting religious discrimination to numerous members of management.

81.    In retaliating against Cynthia Hampton because of her protected activity, the City of St. Petersburg, through its authorized agents, willfully and recklessly disregarded whether its conduct was prohibited by Title VII.

82.    As a result of the City of St. Petersburg's retaliation, Cynthia Hampton has lost her job, has lost wages, has lost seniority, has lost fringe benefits, has suffered an employer's repudiation of her closely-held religious beliefs, has suffered through an internal affairs investigation and interrogation, has suffered a permanent termination on her work record, and has suffered inconvenience in having to find other work.

**WHEREFORE,** Plaintiff, CYNTHIA HAMPTON, demands the following relief against Defendant, CITY OF ST. PETERSBURG, both under Title VII and under the Civil Rights Act of 1991:

a.    reinstatement under 42 U.S.C. § 2000e-5(g), including all seniority;

b.    back pay under 42 U.S.C. § 2000e-5(g), including all pay raises and fringe benefits;

c.    front pay, including all pay raises and fringe benefits;

d.    prejudgment interest;

e.    compensatory damages for inconvenience and for pain and suffering under 42 U.S.C.

§ 1981a(a);

     f.     expert witness fees under 42 U.S.C. § 2000e-5(k);

     g.     attorney's fees under 42 U.S.C. § 2000e-5(k); and

     h.     costs under Federal Rule of Civil Procedure 54(d) and applicable federal statutes.

### DEMAND FOR JURY TRIAL

Plaintiff, Cynthia Hampton, hereby demands a jury trial on all issues under 42 U.S.C. §

1981a(c)(1).

THEODORE "TED" E. KARATINOS
PRUGH, HOLLIDAY, DEEM &
 KARATINOS, P.L.
1009 West Platt Street
Tampa, Florida 33606
(813) 251-3548
Florida Bar No. 0983209
Counsel for Plaintiff

11



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
3504 0700

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

Ms. Cynthia C. Hampton
c/o Ted E. Karatinos, Esquire
Law Offices of Prugh, Holliday, et al.
Alexander Bldg. Old Hyde Park
1009 W. Platt St.
Tampa, FL 33606

June 26, 2003

Re: EEOC Charge Against City of St. Petersburg, Police Dept., et al.
No. 15G200300042

Dear Ms. Hampton:

Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since
the date the Commission assumed jurisdiction over the charge, and no
suit based thereon has been filed by this Department, and because
you through your attorney have specifically requested this Notice,
you are hereby notified that you have the right to institute a civil
action under Title VII of the Civil Rights Act of 1964, as amended,
42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be
filed in the appropriate Court within 90 days of your receipt of
this Notice.

This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is
meritorious.

                    Sincerely,

                    Ralph F. Boyd, Jr.
                    Assistant Attorney General
                    Civil Rights Division

        by

                    Karen L. Ferguson
                    Civil Rights Analyst
                    Employment Litigation Section

cc: Tampa Area Office, EEOC
    City of St. Petersburg, Police Dept., et al.





# BAYCARE
### HEALTH SYSTEM

## CORPORATE HEALTH SERVICES

BayCare Occupational Health – St. Anthony's
1201 5th Avenue North, Suite 105
St. Petersburg, Florida 33705
(727) 825-1160

## PATIENT CONSENT AND AUTHORIZATION

Patient Name: <u>Cynthia Hampton</u>

Home Address: _____

City: _____ State: _____ Zip Code: _____

Date of Birth: <u>August 3, 1958</u>     SS#: <u>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</u>

Telephone No.: (<u>727</u>) _____     (___)_____
                                  Day                                 Evening
Employer: <u>City of St. Petersburg</u>     Telephone No.: <u>727-892-1430</u>

I, <u>Cynthia Hampton</u>_____, the undersigned, hereby authorize
                Print Name
BayCare Occupational Health physicians and health care professionals to perform a
physical examination. If I should experience any adverse effects while undergoing the
examination, I hereby authorize BayCare Occupational Health, its physicians and health
care professionals to administer treatment as deemed necessary in their professional
judgment.

I hereby authorize BayCare Occupational Health to release results of my medical
examination to my current employer or their representative.

I have read this consent form in its entirety and fully understand its contents. The
witness whose signature appears below has fully explained any questions I may have
had regarding this consent form and its contents.

_____     _____
                Signature of Patient                              Date

_____     _____
                Signature of Witness                              Date



## MEMO

TO:      Chain of Command Board

RE:      Cynthia Hampton

DATE:    October 14, 2002

I am willing to do the following concerning my medical condition:

1.    I agree to authorize my doctor, Juan Escaboles, to answer any questions concerning his treatment to me for migraine headaches.

2.    I agree to undergo a physical examination as scheduled by my employer.

3.    I will sign the attached authorization with the following language deleted "...I hereby authorize BayCare Occupational Health, its physicians and health care professionals to administer treatment as deemed necessary in their professional judgment." My objection to the language is due to my religious beliefs as a Jehovah's Witness.

4.    In the alternative, I will sign the attached authorization with additional language added to the end of the sentence referred to above in #3. Said language will read:  "and in accordance with my religious beliefs as a Jehovah's Witness."

*Cynthia C. Hampton*
CYNTHIA HAMPTON

